# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| GORDON MILES, | Case No. 19-CV-1078-WMW-KMM |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| EMILY JOHNSON-PIPER; TONY LOUREY; NANCY JOHNSTON; KEVIN MOSER; PETER PUFFER; BETH SODERMAN; KATHRYN LOCKIE; COURTNEY MENTEN; JOSEPH MULLEN; HEIDI MENARD; SKYE BRISTER; KATHERINE MCDOWELL; STACI BOVIN; SARAH HERRICK; SKYE DAVIS; JENNIFER JOHNSON; RUBY BREWER; KENT JOHANSEN; PAUL MAYFIELD; DEBBIE BECKER-SAILOR; BRIAN NINNEMAN; SUE JOHNSON; JENNY COLLELO; NATHAN MADSEN; MATTHEW BROWN; ADAM YOUNG; JOSEPH MARCZAK; DONALD GEIL; BRITTANY JORGENSON; KATY POTER; ELIZABETH PETERSON; MEGAN MCCAULEY; JENSINA ROSEN; LEANN BERGMAN; and JOHN AND JANE DOES, in their personal and official capacities, | |
| Defendants. | |

1

Plaintiff Gordon Miles, pro se.

Brandon L. Boese, Matthew Hart, and Nicholas Walker Anderson, Officer of the Minnesota Attorney General, for defendants.

***

Plaintiff Gordon Miles, a client of the Minnesota Sex Offender Program ("MSOP"), brings multiple claims under 42 U.S.C. § 1983 related to MSOP's practice of double-bunking clients — a practice that Mr. Miles believes is unsafe, as all clients at MSOP have been deemed dangerous by the State of Minnesota.  Mr. Miles has also moved for preliminary injunctive relief and to consolidate this action with two other lawsuits that he has filed recently in this District.  Defendants, MSOP officials sued both in their personal capacities and in their official capacities as agents of the State of Minnesota, have moved to dismiss the complaint.

For the reasons provided below, this Court recommends that defendants' motion to dismiss largely be granted and that the bulk of Mr. Miles's claims be dismissed.  The lone exception to this recommendation is a First Amendment retaliation claim brought by Mr. Miles, which this Court concludes ought to be allowed to proceed.  This Court further recommends that Mr. Miles's motions for preliminary injunctive relief and consolidation be denied.

## I.  ALLEGATIONS

Mr. Miles, like most (if not all) MSOP clients, has been committed indefinitely on the finding that he is a sexual psychopathic personality and a sexually dangerous

person. *See In re Civil Commitment of Miles*, No. A14-0795, 2014 WL 4798954, at *1 (Minn. Ct. App. Sept. 29, 2014); Am. Compl. ¶ 43 [ECF No. 15]. Mr. Miles alleges that, to a person, "[c]lients at MSOP are emotionally unstable, impulsive in behavior, lack customary standards of good judgment, and fail to appreciate the consequences of personal acts . . . ." Am. Compl. ¶ 44. According to Mr. Miles, MSOP clients are dangerous not only to members of the general public, but to their fellow MSOP clients as well. *See, e.g.*, Am. Compl. ¶¶ 45-48.

Shortly after arriving at MSOP, Mr. Miles was told by defendants Sarah Herrick and Joseph Mullen "that it is an expectation that all clients have a roommate." Am. Compl. ¶ 50; *accord* Am. Compl. ¶ 52. Mr. Miles resisted placement with another client on the grounds "that he had a fear of being locked in a room with another client, and that he refuse[d] to be locked in a room with a known dangerous sexual predator." Am. Compl. ¶ 57. Over the following months, Mr. Miles submitted grievances regarding the planned enforcement of MSOP's double-bunking practice. *See, e.g.*, Am. Compl. ¶ 56. Those grievances were rejected, and Mr. Miles was informed that he would be required to room with another client. Finally, in early 2015, Mr. Miles was told by defendants Jenny Collelo and Brittany Jorgenson that he would be required to move in with another client or be transferred to MSOP's High Security Area ("HSA"), a restricted area of the facility in which clients are afforded fewer privileges. *See* Am. Compl. ¶ 59. Mr. Miles remained adamant that he

would not room with another client; he was then transferred to the HSA for failure to comply with directives. *Id.*

This process played itself out repeatedly over the following years. Every few months or so, Mr. Miles was told by MSOP officials that he would be required to bunk with another client in order to leave the restrictive housing units; on each occasion, Mr. Miles informed MSOP personnel that bunking with another client would put him at risk due to the dangerousness of all clients housed at MSOP. Even upon being offered a list of potential bunkmates from which to choose, Mr. Miles opted to remain in restrictive housing. *See, e.g.*, Am. Compl. ¶ 74.

Mr. Miles alleges that he suffered several adverse consequences from his decision not to room with another client. First, he was unable to participate in off-unit sex-offender programming while living in restricted housing. *See, e.g.*, Am. Compl. ¶ 71. Second, Mr. Miles was forced to send some of his property away from the MSOP facility: he could not keep the property with him while he resided in restrictive housing, and MSOP refused to store it for him long-term. Sending property outside the facility is tantamount to loss of the property, alleges Mr. Miles, "because the old item, once sent out, won't be let back in." Am. Compl. ¶ 75. Third, Mr. Miles alleges that his supervised release was twice revoked as a result of the imbroglio over housing, as his refusal to live with another client was regarded as a refusal to undergo sex-offender treatment, a condition of his supervised release. *See* Am. Compl. ¶¶ 81, 135. Fourth, Mr. Miles alleges that he was punished through

4

discharge from sex-offender programming for telling other clients that MSOP's double-bunking directives are unlawful, which he claims was an exercise of his First Amendment rights. *See, e.g.*, Am. Compl. ¶ 82. Fifth, Mr. Miles alleges that he was often refused access to legal materials and therefore denied access to the courts while in HSA or other restrictive housing units, also in violation of his First Amendment rights. Sixth, Mr. Miles alleges that on two occasions while being transported to or from restrictive living areas, MSOP officials failed to appropriately protect him from cold weather, thus demonstrating deliberate indifference. *See* Am. Compl. ¶¶ 195-98, 229-36.

Based on those allegations, Mr. Miles brought — as a formal matter — eight causes of action in his amended complaint, the operative pleading in this litigation. *See* Am. Compl. ¶¶ 147-244. That count, however, is misleading: several of the causes of action contain multiple distinct claims for relief, but many of the claims and causes of action are substantially overlapping. Reorganized somewhat, the amended complaint may fairly be interpreted as raising roughly eleven claims for relief:

- That MSOP officials' insistence that Mr. Miles live with another client amounted to failure to protect and deliberate indifference.

- That MSOP officials retaliated against Mr. Miles following the lawful exercise of his First Amendment rights.

- That MSOP officials denied Mr. Miles access to the courts while he was kept in secure housing.

- That MSOP officials refused to provide necessary medical and sex-offender treatment while he was kept in secure housing, in violation of Mr. Miles's federal constitutional rights.

- That Mr. Miles's relocation to HSA and other segregated living arrangements, and the restrictions placed on Mr. Miles while living without a roommate, were imposed in violation of his due-process rights.

- That Mr. Miles was unlawfully deprived of his property without due process of law.

- That the conditions of Mr. Miles's confinement while in restrictive housing amounted to a violation of his substantive-due-process rights.

- That four MSOP officials demonstrated deliberate indifference by transporting Mr. Miles outside in cold weather without adequate protection from the elements.

- That MSOP officials violated Minnesota state law through their failure to provide Mr. Miles with sex-offender treatment during the periods in which he was not housed with the general MSOP population

- That several MSOP officials committed malpractice under Minnesota law by failing to diagnose and treat Mr. Miles's psychological disorders.

- And, finally, that defendant Emily Johnson-Piper breached a contractual duty to provide meaningful sex-offender treatment to Mr. Miles.

As explained below, this Court recommends that all but the second of those claims (Mr. Miles's First Amendment retaliation claim) be dismissed at this time.

## II.  ANALYSIS

This matter is before the Court on three motions.  Alongside his original complaint, Mr. Miles also submitted a motion for a preliminary injunction requesting that the Court prohibit the defendants from requiring him to bunk with another

MSOP client. *See* ECF No. 8. Defendants responded to preliminary-injunction motion and, at the same time, filed a motion to dismiss Mr. Miles's amended complaint pursuant to Rule 12 of the Federal Rules of Civil Procedure. *See* ECF No. 21. This Court will first discuss defendants' motion to dismiss before turning to Mr. Miles's motion for a preliminary injunction. Finally, the Court will address Mr. Miles's motion to consolidate this matter with two other lawsuits filed by him around the time that he commenced this lawsuit. *See* ECF No. 40.

### A. Motion to Dismiss

#### 1. Standard of Review

In reviewing a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a court must accept as true the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Aten v. Scottsdale Ins. Co.*, 511 F.3d 818, 820 (8th Cir. 2008). Although the factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim for relief must "plausible on its face" to survive review under Rule 12(b)(6). *Id.* at 570.

#### 2. Voluntarily Dismissed Claims

Among the claims brought in the amended complaint were the following: (1) that defendants Joseph Marczak, Adam Young, Nathan Madsen, and Matthew Brown demonstrated deliberate indifference by transporting Mr. Miles outside without adequate protection from the cold weather, *see* Am. Compl. ¶¶ 195-98, 229-36; (2) that

7

certain of the defendants violated Minn. Stat. § 253B.03 through a failure to provide Mr. Miles with sex-offender treatment during the periods in which he was not housed with the general MSOP population, *see* Am. Compl. ¶¶ 217-24; (3) that defendants Sarah Herrick, Skye Davis, Sue Johnson, Staci Bovin, Elizabeth Peterson, and Ruby Brewer committed medical malpractice under Minnesota law by failing to diagnose and treat Mr. Miles's psychological disorders, *see* Am. Compl. ¶¶ 237-40; and that defendant Emily Johnson-Piper breached a contractual duty to provide meaningful sex-offender treatment, *see* Am. Compl. ¶¶ 241-44. (These are the final four claims listed above in this Court's bulletpoint summarization of the amended complaint.) Mr. Miles concedes in his briefing that he has failed to state a claim upon which relief may be granted with respect to any of these four claims. *See* Pl. Mem. in Opp. at 12, 15, 16 [ECF No. 33]. Accordingly, this Court recommends that these four claims be dismissed without prejudice.

Similarly, Mr. Miles states in his amended complaint that each of the defendants is named to this lawsuit both in their personal capacities and in their official capacities as agents of the State of Minnesota. Mr. Miles seeks both monetary relief and injunctive relief in the pleading, but he is not precise in his pleading about which form of relief is sought from each defendant in their separate capacities. Defendants correctly note that monetary relief is not available against them in their official capacities as state officers and employees. *See, e.g.*, *Hafer v. Melo*, 502 U.S. 21, 27 (1991). In response, Mr. Miles asks that the complaint be interpreted as seeking

8

only injunctive relief from the defendants in their official capacities.  *See* Pl. Mem. in Opp. at 16-17.  To the extent that the amended complaint can be read as seeking monetary relief from the defendants in their official capacities, those claims may be regarded as voluntarily dismissed and dismissed without prejudice.

### 3.  Remaining Claims

#### a.  *Failure to Protect and Deliberate Indifference*

The central claim raised in the amended complaint is that MSOP officials presented Mr. Miles with what he repeatedly characterizes as a "Hobson's Choice": either accept a housing arrangement with a roommate, or (on Mr. Miles's account) suffer the loss of other constitutionally protected rights.  Mr. Miles opted throughout the period at issue not to room with another client.  The claims discussed below concern whether the conditions to which Mr. Miles was subjected after his decision amounted to a constitutional violation.  First, however, this Court considers the opposite side of the coin: Did MSOP officials violate Mr. Miles's constitutional rights by directing him to live with another client?

Mr. Miles variously characterizes this claim either as one of failure to protect or as one of deliberate indifference by MSOP officials.  "Because being subjected to violent assault is not part of the penalty that criminal offenders [must] pay for their offenses, [t]he Eighth Amendment imposes a duty on the part of prison officials to protect prisoners from violence at the hands of other prisoners."  *Whitson v. Stone County Jail*, 602 F.3d 920, 923 (8th Cir. 2010) (quotations and citations omitted); *accord*

*Farmer v. Brennan*, 511 U.S. 825, 832-34 (1994). A similar duty to protect detained non-prisoners arises under the Due Process Clause of the Fourteenth Amendment, and that duty is, at a minimum, coextensive with the Eighth Amendment duty to protect prisoners. *Doe v. Washington County*, 150 F.3d 920, 922 (8th Cir. 1998). To establish a failure-to-protect claim, the detainee must show that the official "was deliberately indifferent to a 'substantial risk of serious harm.'" *Young v. Selk*, 508 F.3d 868, 872 (8th Cir. 2007) (quoting *Farmer*, 511 U.S. at 828). "In doing so, a [plaintiff] must satisfy two requirements, one objective and one subjective. The first requirement tests whether, viewed objectively, the deprivation of rights was sufficiently serious; i.e., whether the inmate 'is incarcerated under conditions posing a substantial risk of serious harm.'" *Whitson*, 602 F.3d at 923 (quoting *Farmer*, 511 U.S. at 824). "The second requirement is subjective and requires that the inmate prove that the [state] official had a 'sufficiently culpable state of mind.'" *Ibid.* Claims that state officials were deliberately indifferent to a detainee's safety arise from the same constitutional font and require an identical two-step analysis. *See, e.g.*, *Letterman v. Does*, 789 F.3d 856, 862 (8th Cir. 2015); *Kahle v. Leonard*, 477 F.3d 544, 550 (8th Cir. 2007).

Both the objective and subjective prongs independently thwart Mr. Miles's deliberate-indifference and failure-to-protect claims. First, concerning the objective component: The Eighth Circuit has repeatedly rejected the argument — including when made in the specific context of MSOP — that double-bunking detainees

amounts by itself to a constitutional violation.  *See Beaulieu v. Ludeman*, 690 F.3d 1017, 1042-43 (8th Cir. 2012); *Cody v. Hillard*, 830 F.2d 912, 915-16 (8th Cir. 1987); *cf. Bell v. Wolfish*, 441 U.S. 520, 542 (1979) ("We disagree with both the District Court and the Court of Appeals that there is some sort of 'one man, one cell' principle lurking in the Due Process Clause of the Fifth Amendment.").  State officials certainly may be found to act with deliberate indifference when they carry out a double-bunking policy in a manner that poses a substantial risk of safety to detainees, *see Smith v. Arkansas Dep't of Correction*, 103 F.3d 637, 644-45 (8th Cir. 1996), but Mr. Miles's claim is more categorical: that *any* double-bunking of detainees at MSOP creates a substantial risk of harm given the nature of the detainees and their histories of sexual violence.[1]  Such a claim cannot survive in the face of holdings stating that the double-bunking of inmates or civil detainees, even detainees with a history of violent conduct, can be implemented in a manner consistent with the federal constitution.  *See Beaulieu*, 690 F.3d at 1042-43.  Because Mr. Miles offers no reason to infer from the pleading that MSOP's double-bunking practice is *not* being implemented in a reasonable manner, his claims relating to the threatened implementation of that practice should be dismissed.

---

[1] On Mr. Miles's own allegations, MSOP officials provided him at times with a list of detainees from which to choose.  *See, e.g.*, Am. Compl. ¶ 74.  On each occasion, Mr. Miles rejected the entire list on the grounds that the detainees listed were persons found to be sexually dangerous.

Moreover, Mr. Miles has failed to adequately allege that MSOP officials acted with a subjective intent to cause harm or a purposeful indifference to the risk of harm to clients from double-bunking. A neutral rationale was offered for the double-bunking policy: constraints on space within the facility. *See* Am. Compl. ¶¶ 56. No plausible allegation is presented by Mr. Miles that this explanation is merely a cover for less permissible motives. Nor, given the findings above regarding objective risk of danger, can Mr. Miles plausibly allege that implementation of a double-bunking policy at MSOP in and of itself reflects the "sufficiently culpable state of mind" necessary to establish deliberative indifference or a failure to protect.[2] *Whitson*, 602 F.3d at 923 (quotation omitted). Because Mr. Miles has failed to allege either of the required elements of his claims, those claims must be dismissed.

### b. Retaliation

On at least two occasions, Mr. Miles was dismissed from core group[3] by defendant Kent Johansen after "telling other clients about their constitutional rights and Plaintiff's concerns about the dangers of being locked in an unsupervised room

---

[2] Mr. Miles has submitted a declaration from another MSOP client stating that Mr. Miles reported a groping incident in June 2019 after he had been moved into a room with another client. *See* Declaration of Rob Rose [ECF No. 30]. Even if considered as part of the pleading, however, the declaration tends to confirm that defendants did *not* act with the requisite subjective intent to establish a failure-to-protect or deliberate-indifference claim; after the alleged incident, Mr. Miles was immediately returned to solitary housing away from the client who (according to Mr. Miles) committed the offense. *Id.*

[3] "Core group" is a multi-party therapy session attended by several clients of MSOP together. *See, e.g., Stabnow v. Piper*, No. 16-CV-2648 (DWF/LIB), 2017 WL 9274907, at *1-2 (D. Minn. Apr. 7, 2017).

12

with a known dangerous sexual predator that posed a substantial risk of serious harm to another person . . . ." Am. Compl. ¶ 187. Mr. Miles claims that his removals from core group were made in retaliation for the exercise of his First Amendment rights. *See* Am. Compl. ¶¶ 187-90.

"To establish a First Amendment retaliation claim under 42 U.S.C. § 1983, the plaintiff must show (1) he engaged in a protected activity, (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004). "Failure to satisfy any of the three elements results in the failure of the claim." *Evenstad v. Herberg*, 994 F. Supp. 2d 995, 1000 (D. Minn. 2014) (citing *Higdon v. Jackson*, 393 F.3d 1211, 1219 (11th Cir. 2004)).

In determining the scope of MSOP detainee activities that are protected under the First Amendment, courts of this District have long used a modified version of the test set out in *Turner v. Safley*, 482 U.S. 78 (1987). *See Ivey v. Johnston*, No. 18-CV-1429 (PAM/DTS), 2019 WL 3334346, at *5 (D. Minn. July 24, 2019). "In *Turner*, the Supreme Court address[ed] the unique problems posed in a prison setting and set out to formulate a standard of review for prisoners' constitutional claims to laws, policies and regulations governing prison management that responded to the policy of judicial complaints and the need to protect constitutional rights." *Ivey v. Mooney*, No. 05-CV-2666 (JRT/FLN), 2008 WL 4527792, at *10 (D. Minn. Sept. 30, 2008) (quotations

13

omitted). *Turner* held that prison officials may lawfully take action that would otherwise impinge upon an inmate's constitutionally protected activity so long as the action is "reasonably related to legitimate penological interests." 482 U.S. at 85. MSOP clients are not prisoners, and thus MSOP officials do not have legitimate penological interests. MSOP officials do, however, have legitimate therapeutic and institutional interests, and those interests may at times limit the scope of protected activity to which MSOP detainees would otherwise be entitled outside the institutional setting. *See Ivey*, 2008 WL 4527792, at *10. Defendants invoke this modified *Turner* analysis in arguing that the speech engaged in by Mr. Miles was not constitutionally protected activity.

The fact that defendants' challenge to Mr. Miles's retaliation claim is brought under Rule 12(b)(6) is critical here. Although application of the *Turner* (or modified-*Turner*) factors may sometimes be so obvious as to warrant judgment on the pleadings alone, courts "have historically viewed these inquiries as being fact-intensive [and requiring] a contextual, record-sensitive analysis." *Ramirez v. Pugh*, 379 F.3d 122, 130 (3d Cir. 2004) (citations and quotations omitted); *accord Ivey*, 2019 WL 3334346, at *6 ("Applying *Turner* and determining the extent of First Amendment rights in the civil commitment context, like its penological counterpart, 'is a fact-intensive universe.'" (quoting *Holloway v. Magness*, 666 F.3d 1076, 1079 (8th Cir. 2012)).

The circumstances of Mr. Miles's eviction from core group remain unclear from the pleading alone. One can certainly infer scenarios in which Mr. Miles's

pressing of his grievances regarding the attempted imposition of a roommate constituted a disruption to the therapeutic process, thus permitting MSOP to lawfully curtail the speech. But one can also infer scenarios in which Mr. Miles's speech was *not* disruptive to the therapeutic process, but was instead protected speech. Mr. Miles is entitled to all reasonable inferences in his favor. *See Aten*, 511 F.3d at 820. This Court cannot conclude on the pleadings alone that, in light of *Turner*, Mr. Miles was not engaged in protected activity when he provided his opinion regarding MSOP's roommate policy; the question is better suited to further evidentiary development.

Defendants' motion to dismiss focuses entirely on the modified *Turner* analysis and whether Mr. Miles was engaged in protected activity. Because defendants did not argue that removal from core group is insufficient to "chill a person of ordinary firmness" from engaging in protected activity, *see Revels*, 382 F.3d at 876, this Court assumes for sake of this Recommendation that Mr. Miles has adequately pleaded this element of his retaliation claim. Likewise, Mr. Miles has pleaded a sufficient nexus between the protected activity and the action taken by defendants to survive Rule 12(b)(6) review. Accordingly, defendants' motion to dismiss is denied with respect to the retaliation claim, and that claim will be recommended to go forward as to defendant Kent Johansen.[4]

---

[4] Defendants invoke qualified immunity in their motion to dismiss with respect to each of Mr. Miles's claims, but their argument is directed entirely towards the claims related to the double-bunking practice and the transfer to restrictive housing, not the retaliation claim. In any event, the right of detainees to be free from retaliation after exercising their First

*c.  Access to the Courts*

Somewhat disconnected from his other claims, Mr. Miles alleges that he was denied access to legal materials on September 5, 2018, and again the following day. *See* Am. Compl. ¶¶ 127-29.  On September 11, 2018, Mr. Miles was moved to housing where a legal computer was made available to him.  *See* Am. Compl. ¶ 130.  Mr. Miles contends that this six-day denial of legal materials constituted denial of access to the courts in violation of his First Amendment rights.  *See* Am. Compl. ¶¶ 193-94.

"To prove a violation of the right of meaningful access to the courts, a [litigant] must establish the state has not provided an opportunity to litigate a claim challenging the [litigant's] sentence or conditions of confinement in a court of law, which resulted in actual injury, that is, the hindrance of a nonfrivolous and arguably meritorious underlying legal claim."  *White v. Kautzky*, 494 F.3d 677, 680 (8th Cir. 2007); *accord Beaulieu v. Ludeman*, No. 07-CV-1535 (JMR/JSM), 2008 WL 2498241, at *18 (D. Minn. 2008).  Mr. Miles has not alleged the existence of an "actual injury" resulting from the short period in which he was denied legal materials.  Even if this Court were to assume that Mr. Miles has an arguably meritorious claim available to him during that

---

Amendment rights is well established, and there are scenarios reasonably inferable from the pleading in which defendant Johansen's actions would have been obviously unlawful at the time of the incident.  *See Small v. McCrystal*, 708 F.3d 997, 1003 (8th Cir. 2013) (qualified-immunity standard); *Taylor v. Bailey*, 494 Fed. App'x 674, 675 (8th Cir. 2012) (per curiam). While development of the factual record may very well reveal that Johansen is entitled to qualified immunity, such a finding in this case would be premature on the basis of the pleading alone.

period, "[m]ere disturbance in the pursuit of litigation without prejudice to litigation interests does not suffice to allege actual injury." *Favors v. Hoover*, No. 13-CV-0428 (JRT/LIB), 2014 WL 4954682, at *18 (D. Minn. May 13, 2014) (citing *Monsky v. Moraghan*, 127 F.3d 243, 247 (2d Cir. 1997)). In other words, to succeed on his access-to-the-courts claim, Mr. Miles would have to show that the six-day delay caused him to forfeit an otherwise meritorious claim that would have been available to him — or, at a minimum, caused actual harm to his efforts to litigate a matter. No such allegation appears in the complaint; the brief restriction on legal materials seems to have been entirely without consequence. Mr. Miles has not pleaded a viable claim of denial of access to the courts. Accordingly, the claim should be dismissed.

### d. Due Process

Mr. Miles next contends that his due-process rights were violated by MSOP officials in three respects.[5] First, Mr. Miles claims that his transfer to, and extended residence in, more restrictive living arrangements was enacted without adequate procedural protections. Second, Mr. Miles claims that he was deprived of property without adequate procedural protections. Third, Mr. Miles claims that his living arrangements while in restrictive housing amounted to a violation of his substantive-due-process rights. Those claims will be considered in turn below.

---

[5] Mr. Miles sometimes characterizes the claims already discussed as also arising under the Due Process Clause, but this Court has concluded that a more accurate construction of those claims sees them arising from the constitutional provisions discussed above.

i. Transfer

The bulk of Mr. Miles's due-process claim concerns whether he was afforded adequate procedural protection before being transferred to more restrictive housing due to his refusal to accept a roommate. "The Supreme Court mandates a two-step analysis for procedural due-process claims: 'We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient.'" *Jenner v. Nikolas*, 828 F.3d 713, 716 (8th Cir. 2016) (quoting *Swarthout v. Cook*, 562 U.S. 216, 219 (2011)). "Protected liberty interests may arise from the Due Process Clause itself or from an expectation or interest created by state law or policies." *Id.*

Identifying the precise protected liberty interest at issue here is somewhat tricky. On the one hand, Courts of this District have long assumed that placement in HSA or other restrictive-housing arrangements can, in the case of MSOP clients, implicate protected liberty interests. *See, e.g.*, *Whipple v. Edwards*, No. 13-CV-2861 (JRT/HB), 2019 WL 2016782, at *6 (D. Minn. Jan 14, 2019) (collecting cases), *overruled on other grounds in* 2019 WL 1324862 (D. Minn. Mar. 25, 2019). On the other hand, the amended complaint is light on allegations about how, specifically, Mr. Miles's liberty was curtailed by his placement outside of general housing.[6]

---

[6] There are two exceptions to this lack of specificity. The first, concerning limits on property possession placed upon Mr. Miles while in restrictive housing, is discussed below. The second concerns the curtailment of at least some forms of sex-offender treatment while Mr. Miles remained in restrictive housing. Mr. Miles has no *substantive* right to sex-offender

18

Nevertheless, this Court assumes that Mr. Miles's placement in restrictive housing did, in and of itself, implicate a protected liberty interest.

The question, then, is whether Mr. Miles was afforded adequate procedural protections for challenging the placement. The answer is yes. The pleading is replete with grievances, responses to grievances, and explanations for the decisions made by MSOP officials. *See, e.g.*, Am. Compl. ¶¶ 56, 122-23. Upon Mr. Miles's initial admission to MSOP, state officials waited several months before transferring Mr. Miles to HSA as this process played out. *See* Am. Compl. ¶¶ 49-59. At no time was there any question as to why Mr. Miles was being transferred.[7] And Mr. Miles does not dispute the central rationale of the transfer — that he refused to bunk with another client and thereby failed to comply with directives.

Mr. Miles's complaint, at its core, appears to be more substantive than procedural; his focus in both his complaint and his briefing is less on the procedures that MSOP officials should have employed prior to placing him in the HSA than on

---

treatment while detained at MSOP. *See Karsjens v. Piper*, 845 F.3d 394, 409 (8th Cir. 2017). Even assuming that Mr. Miles nevertheless has a protected liberty interest in sex-offender treatment that is subject to *procedural* due-process protections, he has not shown (as discussed more fully below) that the procedures employed by MSOP officials were inadequate.

[7] Mr. Miles alleges throughout the amended complaint that "there was no written policy or expectation . . . that requires a Client to be locked in a room with a known dangerous sexual predator or to put his safety at risk in order to receive treatment." Am. Compl. ¶ 81. But the infringement that landed Mr. Miles in restrictive housing was failure to comply with directives of an MSOP official, *see* Am. Compl. ¶ 59, and Mr. Miles does not allege that there is no written policy setting out sanctions for failure to comply with directives.

his argument that MSOP officials had no rightful authority to require him to accept a roommate at all. This Court has already rejected that substantive argument. Meanwhile, Mr. Miles has not plausibly alleged that he was entitled to greater procedural protections before MSOP officials could decide to transfer him to more restrictive housing. This claim should therefore be dismissed.

### ii. Loss of Property

Mr. Miles also alleges that he was not allowed to possess certain property while in restrictive housing. Because Mr. Miles could not keep the property in his room, he was required to put that property into storage. MSOP, however, limits the amount of property that clients may keep in storage at any given time. Because Mr. Miles came to exceed this allotted storage space, part of his property was sent away from the facility. Mr. Miles alleges that, once sent away, he cannot get the property back; MSOP prohibits old items from being returned to the facility for safety reasons. *See* Am. Compl. ¶¶ 73-75. Mr. Miles claims that the sending away of his property without adequate procedural protections amounts to a violation of his due-process rights.

As before, the due-process inquiry proceeds at two steps. First, this Court must determine if Mr. Miles has been deprived of a protected property interest. Second, if a protected property interest is implicated, this Court must then consider what process is due before that interest may be affected. *See Senty-Haugen v. Goodno*, 462 F.3d 876, 886 (8th Cir. 2006); *ARRM v. Piper*, 367 F. Supp. 3d 944, 955 (D. Minn. 2019). "A procedural due process claim focuses not on the merits of a deprivation,

but on whether the State circumscribed the deprivation with constitutionally adequate procedures." *Parrish v. Mallinger*, 133 F.3d 612, 615 (8th Cir. 1998).

Evaluating Mr. Miles's due-process claim requires identifying the precise nature of the property interest at issue. This Court assumes, without deciding, that Mr. Miles retains a protected liberty interest in the *ownership* of the items previously in his possession. At issue, however, is not Mr. Miles's ownership of the personal property — Mr. Miles does not allege that he was deprived of ownership[8] — but his continued *possession* of that property while at MSOP. *Cf. Cosco v. Uphoff*, 195 F.3d 1221, 1222 (10th Cir. 1999) ("It is clear from the complaint that appellants are not arguing about the ownership of the property but rather the right to keep the hobby and legal materials in their cells."). With respect to possession of personal property, courts have regularly and uniformly found that both prisoners and civil detainees have only limited rights to possession of specific articles of property while detained — rights that fall short of the "protected property interests" implicated by the Due Process Clause. *See, e.g., Lyon v. Farrier*, 730 F.2d 525, 526-27 (8th Cir. 1984) (per curiam); *Cosco*, 195 F.3d at 1223; *Taylor v. Coughlin*, 29 F.3d 39, 40 (2d Cir. 1994) (per curiam); *Spencer v. Federal Prison Camp Duluth*, No. 13-CV-0177 (JNE/JSM), 2016 WL 4942037, at *28 (D. Minn. Aug. 1, 2016); *Semler v. Ludeman*, No. 09-CV-0732 (ADM/SRN),

---

[8] Mr. Miles implies in his amended complaint that he was threatened with destruction of his property, which would indeed implicate his ownership interest in the property. But the actual harm accrued to Mr. Miles was the "send[ing] out" of his property — that is, the loss in possession, but not the loss in ownership. *See* Am. Compl. ¶ 73.

2010 WL 145275, at *24 (D. Minn. Jan. 8, 2010) ("No federal, state or local statute creates a property right for Plaintiffs to possess computers and electronics, electric toothbrushes, electric fans, or unlimited amounts of personal property and clothing."); *Beaulieu*, 2008 WL 2498241, at *16 ("There is no Minnesota statute giving civilly committed individuals generally, or [MSOP] detainees, specifically, the right to possess all of their property.").

Mr. Miles does not allege that he was deprived of the ownership of any particular article of property. Even after being forced to send the property away from the MSOP facility, Mr. Miles presumably retains an ownership interest in that property and will continue to do so — or at least the amended complaint does not allege to the contrary. Defendants have restricted Mr. Miles's ability to *possess* some of that property during his detention at MSOP, but the loss of possession of property, without more, does not implicate a protected liberty interest. Accordingly, Mr. Miles's is not entitled to procedural protections under the Due Process Clause before being deprived of his possessory interest.

### iii.  Substantive Due Process

Along with his procedural-due-process claims, Mr. Miles also contends that the conditions in which he was housed violated his substantive-due-process rights. "[T]o prevail on an as-applied [substantive] due process claim, that the state defendants' actions violated the plaintiffs' substantive due process rights, the plaintiffs 'must demonstrate *both* that the [state defendants'] conduct was conscience-shocking, *and*

that the [state defendants] violated one or more fundamental rights that are 'deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed.'" *Karsjens v. Piper*, 845 F.3d 394, 408 (8th Cir. 2017) (*quoting Moran v. Clarke*, 296 F.3d 638, 651 (8th Cir. 2002) (en banc) (Bye, J., concurring, writing for a majority on this issue)). "To determine if the actions were conscience-shocking, the district court should consider whether the state defendants' actions were 'egregious or outrageous.'" *Id.* (quoting *Montin v. Gibson*, 718 F.3d 752, 755 (8th Cir. 2013)). The Eighth Circuit has explained that "[t]o meet this high standard . . . the alleged substantive due process violations must involve conduct 'so severe . . . so disproportionate to the need presented, and . . . so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience.'" *Id.* (quoting *Moran*, 296 F.3d at 647).

To set out this stringent standard of review is practically enough to demonstrate that Mr. Miles has failed to satisfy it. Nothing about Mr. Miles's continued detention in restrictive housing can reasonably be described as conscience-shocking. *See, e.g., Strutton v. Meade*, 668 F.3d 549, 557 (8th Cir. 2012) ("[W]e have held that although 'the Supreme Court has recognized a substantive due process right to reasonably safe custodial conditions, [it has not recognized] a broader due process right to appropriate or effective or reasonable treatment of the illness or disability that triggered the patient's involuntary confinement.'" (quoting *Elizabeth M. v. Montenez*,

23

458 F.3d 779, 788 (8th Cir. 2006)); *Pyron v. Ludeman*, No. 10-CV-3759 (PJS/JJG), 2011 WL 3293523, at *8 (D. Minn. June 6, 2011) (MSOP property restrictions not violation of substantive due process). Indeed, Mr. Miles himself concluded that his conditions in restrictive housing were preferable to accepting a roommate — and, as this Court explained above, MSOP's practice of housing detainees together was itself constitutionally permissible. Nothing alleged in the amended complaint comes close to meeting the requirements of a substantive-due-process claim; the claim should be dismissed.

### B. *Motion for Preliminary Injunction*

At the outset of this litigation, Mr. Miles submitted a motion for a preliminary injunction requesting that the MSOP defendants be barred from continuing their practice of double-bunking detainees. "Under Eighth Circuit precedent, a preliminary injunction may be granted only if the moving party can demonstrate: (1) a likelihood of success on the merits; (2) that the movant will suffer irreparable harm absent the restraining order; (3) that the balance of harms favors the movant; and (4) that the public interest favors the movant." *Seaton v. Wiener*, 22 F. Supp. 3d 945, 948 (D. Minn. 2014) (citing *Dataphase Sys., Inc. v. CL Sys, Inc.*, 640 F.2d 109, 113 (8th Cir. 1981)).

The motion for a preliminary injunction fails at the first of the *Dataphase* factors. This Court concluded above that Mr. Miles has not plausibly alleged that MSOP's practice of double-bunking detainees, by itself, infringes the constitutional

24

rights of those detainees.  "[A]n injunction cannot issue if there is no chance of success on the merits."  *Mid-America Real Estate Co. v. Iowa Realty Co., Inc.*, 406 F.3d 969, 972 (8th Cir. 2005).  Because Mr. Miles cannot succeed on his claim that the double-bunking of MSOP detainees amounts to deliberate indifference or a failure to protect those detainees, his request that the Court intervene in the practice must be denied.

### C.  Motion for Consolidation

Finally, Mr. Miles has moved to consolidate this litigation with two other lawsuits he has filed within the past year.  *See Miles v. Schiller*, No. 19-CV-1914 (JNE/KMM) (D. Minn. filed 2019); *Miles v. Johnson*, No. 19-CV-1567 (JNE/KMM) (D. Minn. filed 2019).  This Court recommends denial of the request.  The court recommends that only a single, limited claim for relief, brought against a single defendant, be allowed to go forward in this matter.  That claim is conceptually distinct from the claims brought in the other two lawsuits, and the lone defendant recommended to continue in this proceeding (Kent Johansen) is not named as a defendant in either of the other cases.  No efficiency is likely to be had from combining the litigation.  In fact, the lone remaining claim could not properly have brought in the other lawsuits.  *See* Fed. R. Civ. P. 20(a)(2).  The motion for consolidation should therefore be denied.

### D.  Conclusion

As explained above, the vast majority of this action is recommended for dismissal. Mr. Miles has voluntarily dismissed his claims arising under state law; his deliberate-indifference claim brought against defendants Marczak, Young, Madsen, and Brown; and his claims for monetary relief brought against the defendants in their official capacities as agents of the State of Minnesota. Accordingly, this Court recommends that those claims be dismissed without prejudice. The Court concludes that all other claims — save the retaliation claim brought against defendant Kent Johansen, which is recommended to proceed — should be dismissed with prejudice on the merits of the pleading. Finally, Mr. Miles's motions for a preliminary injunction and motion to consolidate should be denied.

## RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY RECOMMENDED THAT:

1.   Defendants' motion to dismiss [ECF No. 21] be GRANTED IN PART and DENIED IN PART as follows:

   a.   The motion be DENIED with respect to the retaliation claim brought against defendant Kent Johansen.

   b.   The motion be GRANTED in all other respects.

   c.   The claims brought by plaintiff Gordon Miles under state law; his claim of deliberate indifference arising from his transportation in cold weather; and all claims for monetary relief brought against

26

defendants in their official capacities be DISMISSED WITHOUT

PREJUDICE.

      d.     All other claims be DISMISSED WITH PREJUDICE.

2.     Mr. Miles's motion for a preliminary injunction [ECF No. 8] be

DENIED.

3.     Mr. Miles's motion to consolidate cases [ECF No. 40] be DENIED.

Date:  January 23, 2020                  *s/ Katherine Menendez*
                                              Katherine Menendez
                                              United States Magistrate Judge

## NOTICE

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  *See* Local Rule 72.2(b)(2).  All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).